Good morning. If it pleases the Court, my name is Peter Neufeld, and it's my honor to represent Jimmy Ray Bromgard in this proceeding. And if it's permissible with the Court, I'd like to reserve two minutes for rebuttal at the end of this proceeding. This is a case about Jimmy Ray Bromgard, who the county concedes spent 15 years in prison for a crime he did not commit. He was represented at his criminal trial by an absolutely abysmal attorney, an attorney who was under contract with Yellowstone County to provide representation in 25 percent of all the criminal cases in Yellowstone County, and that the county's system of indigent representation was deliberately indifferent to the Sixth Amendment needs of Mr. Bromgard and other individuals in that county who were indigent. And it's a deliberate indifference that existed because they had absolutely no training, they had absolutely no supervision of these lawyers, and it's as a result of that total deliberate indifference that an ultimately innocent man was caused to spend 15 years in prison. Did the county officials control who the judges appointed to represent defendants back in 19th? I'm sorry. Could the county officials in Yellowstone County, whoever they might be, tell the judges who they could appoint and who they could not appoint back in 1987? They did tell them that, but they did not have the authority. Excuse me, but they did not have the authority legally to contract with those attorneys. The county delegated that responsibility to the judges. I would point out four things. Where do we draw that from? Okay. Number one, there were two attorney general opinions, one in 1977 and one in 1980. Which explicitly state that the provision of defense services for indigent criminal defendants is a county responsibility. And that's in the record, specifically in the record. There's absolutely no statute anywhere in Montana which authorized the judges to select the attorneys. It authorized the judges to set the dollar amount that they would be paid by the counties, but never authorized them to select the attorneys, never authorized them to supervise the attorneys. Indeed, they admit in the discovery in this case that they couldn't supervise the attorneys because of their own ethics rules. Could they determine the county officials fire a lawyer who's representing an indigent defendant? They could advise the county at that point to fire a lawyer, but they didn't do so.  I want to make sure you're right. Go ahead. My understanding is contemporaneous statutes at this time said, quote, if the offense charged is a felony and if the defendant desires counsel and is unable to employ counsel, a court must assign counsel to him, Montana Code 46-8-101-2. There is confusion here on the part of the county. They're conflating the concept of assigning a lawyer to represent someone in a particular case and then establishing what lawyers will be part of the contract system for that county. As you all know, particularly if any of you ever sat as trial court judges, ultimately it is the judge's responsibility to assign a lawyer to a case. It doesn't matter whether you have a public defender system, a contract system, or an assigned counsel system. The ultimate decision rests with the court. That's all that statute says. In fact, if you look at the 1986 study published by the Department of Justice, they acknowledge that 15 of the counties had contract systems, okay? If you accept the county's argument that only the state had the power to define the system, define the indigent defense system in each county, that all 15 of those counties would be violating the law. In fact, in 2003, the chief judge of the Montana Supreme Court, in summarizing the history of the indigent defense programs in Montana, explicitly said that the judges do not have the authority to contract with the lawyers for any of the indigent defense systems. The authority to contract belongs exclusively to the counties. That's reflected in the attorney in general opinions. It's reflected in the statutes. And there is a conflation here, and it's a clever one. Excuse me. Scalia. I'm not sure where that gets you. What? I'm not sure where that gets you. So the county has authority to contract. Where does the responsibility or duty to supervise come from? Your Honor, this case, I think, fits squarely within the heartland of Miranda versus Clark County. An en banc decision, eight to three, in the Ninth Circuit in 2003, which said that a failure on the part of the county to have any training whatsoever for its public defender system give rise to a Monell claim under city of Canton. That's what we're talking about here. Public defenders are a little bit different role than so-called contract attorneys, right? I'm sorry. What's the difference? Public defenders are employed by the county directly. They're county employees. They're county employees, but Monell, okay, doesn't distinguish between somebody who is an actual employee and somebody who is an agent of the county. The county has chosen a contract system. In fact, there's another case. Well, my understanding is the county ultimately adopted a public defender system here. But we're talking about 1987, correct? In 1987, they had a contract system. They did not have a form. Now, you call it a contract system. Was this a written contract with a law firm? Was this a one-on-one contract? Was this an oral contract? Was it a – you know, where was the contract? An implied in law – implied in fact contract? Quantum Maroot? What was it? In summary judgment, the party against whom the motion is filed is entitled to the benefit of the facts, if you will. We provided evidence from the contract attorney Beck, who said it was an oral contract system, from County Commissioner McKay, who said it was an oral contract system, who judged Barr, who acknowledged it was a contract system, from our expert Dan Donovan, who worked in Cascade County, who said that our contract system in Yellowstone County was really no different than Cascade County's. And the reason that becomes particularly important is there's another case that's cited here in our brief, and it's in the record, where the folks went in against Cascade County in the Federal Court and said that their system of indigent representation – they filed in 1987, by the way, very similar time frame – was constitutionally inadequate. And in 1990, a judgment was entered following a consent decree that required them to go back from the contract system to the public defender system. As we all know, intuitively, there are three different systems, indigent defense in America. The three systems are assigned counsel, contract, and a formalized public defender. Those are the three systems. This system is a contract system. These individuals, these four people, were paid a flat fee, $2,000 and change a month, whether they did one case or 50 cases, whether they spent one hour on a case or 1,000 hours on a case. That's the contract system. The county was on the hook. The attorney general twice said the county was on the hook. That's good law in Montana. Maybe I should have expressed it better in my brief, and I apologize if I didn't do it. But who selected these four attorneys? Those four attorneys were selected by the judges, okay? That responsibility rests with the county. The fact that the county chose to delegate to the judges the task of selecting them in no way undermines the fundamental premise here that it's a contract system. And does the record show how the county delegated that duty to the judges? No. I think it can be done just simply done informally or unofficially. But the bottom line is that the Chief Judge of the Montana Supreme Court explicitly held that these judges lacked the legal authority to contract with lawyers for an indigent defense system. In fact, the governor of Montana gave a statement under oath in 2003 saying that, referring backwards, because you've got to remember, in 2005 and 2006, ultimately, the state of Montana took over the whole system, training, supervision, money, the works. But in 2003, referring to the system as it existed, the governor made a formal admission. The formal admission of the governor, which is located on the record at pages 311 and 312, said that the state permits counties to, quote, design and administer their own indigent defense programs. That was the posture in Montana. In fact, they don't cite a single case anywhere in the United States where it was determined in a suit against a county for a failure to have an inadequate criminal indigent defense system, where a case was thrown out because it was determined that the county is the wrong party. There is no cite to that. Instead, what they suggest to all of you is somehow, okay, despite the fact that we won summary judgment the first time because we met all the elements of Monell, we met all the elements of the Supreme Court. I think the same thing applies to doctors, in your view. If the county decides we want to sort of help our poor people and they can't afford a doctor, we will have a series of contact doctors who they can go to for emergencies. They have to supervise the doctors, too. Is that your view? That anything they choose to provide or where the governmental benefit, they undertake this duty to supervise? Why do you think they're not? I don't believe it. I don't. These are doctors. They are licensed by the state authorities. These are lawyers. They are licensed by the, I don't know how it is in Montana, the Supreme Court or the state bar or some combination of those things. Those are lawyers' things. They are listed as lawyers. They're not disbarred. Why don't they hire them and let the bar and the state, if they do anything incompetent, they'll take care of it. There's a fundamental difference. The fundamental difference is there's no constitutional right to get that kind of health care in the United States. Well, there is. I wouldn't be so quick to say that. There's a constitutional right to have competent medical treatment if you're a prisoner in a jail. If you're a prisoner. But I don't think the judge is referring to prisoners. He didn't. But I want to make sure you don't over-concede. But only if you're a prisoner, okay? Exactly. Exactly. That's the point. They have a constitutional right to adequate medical treatment and the defendants have a constitutional right under Gideon to competent appointed counsel. And that's why in the city of Canton, where you dealt with the issue of medical care in a jail setting, in a sense, the lieutenants, although they were employees and these four attorneys are not employees, they're agents of the county, the difference is indistinguishable. There is a fundamental duty to train the people, to supervise the people so they can make knowing and intelligent decisions that will help the people for whom that constitutional right exists. Well, I take it in the jail analogy. If they contracted out, if the lieutenant was trained to recognize a medical problem and the lieutenant then sent to the contract hospital facility that was contracted with the jail and the hospital committed gross malpractice and consistently committed gross malpractice, the county, under your theory, would have some or now liability for failure to supervise the selection of the medical facility. I don't have a ‑‑ I can't answer the question because I don't know enough about it, sir. But it would seem to me that at a certain point, if again and again and again that hospital they contract out to engages in medical malpractice and just kills people willy‑nilly, that the county would be on notice, okay, that this system doesn't work and they're being deliberately indifferent. But what notice did they get here? Excuse me? What notice did the county get here? About this guy Adams? Well, first of all, his nickname was John Jailhouse Adams, Your Honor, and the nickname was given to him because everybody he represented went to jail. Number two, they received ‑‑ A lot of defense lawyers have clients who go to jail. Most of those clients go to jail. It's an unfortunate ‑‑ In this ‑‑ ‑‑ of being a criminal defense lawyer, you lose a lot. In this situation, the county had direct knowledge. There was already determined under Strickland v. Washington that this lawyer had provided ineffective assistance of counsel in another case in which the Yellowstone County attorney sat in the room when that finding was made. That finding was blasted all over the building's newspapers where these lawyers sat. He was found to be incompetent in this case because he never bothered to file an appellate brief. The record here is very compelling, and the district court judge already found, and there's no cross appeal, by the way, already found that we provided overwhelming evidence of ineffective assistance of counsel by this particular lawyer. The district court ‑‑ I'm talking about what notice they had before your client's case. Well, they had ‑‑ they had notice ‑‑ they had notice, number one, of the other Strickland finding where a case had been vacated because of ineffective assistance in his part. They had notice because we deposed the county deputy, the deputy county attorney, who said he had watched this man over a number of years and he provided very poor representation. It was well known. It was common knowledge that very often this guy wasn't even in the courtroom when he was wanted, but he was sitting down at a bar playing poker and otherwise consuming alcohol. There was a lengthy history that the county had knowledge of. But the fact that they had knowledge isn't even before this Court right now. The district court found that we met all the elements of City of Ken, all the elements of Monell. There was a violation of rights, there was deliberate indifference, and that we made sufficient showing that a jury could find that it was the driving force. All that was met. And then we get a new motion for summary judgment, okay, at the 11th hour, raising a new argument, a new argument for which not a single court in the country has ever held that a county would not be on the hook for this. The cases that they cite have nothing to do with this situation, Your Honors. Cases like McMillan, for instance, okay? McMillan is basically deciding that the county sheriff is a State official. No one is suggesting here that the county commissioners, who are the defendants in this case, are State officials. No one is suggesting in this case that on all matters of county business that the county commissioners are not the final authority. I mean, you know, lawyers are not potted plants. We have to have some degree of oversight of supervision and training. That's evolved over the years. Strickland and its progeny, before 1987, made that all very, very clear. Yellowstone completely abdicated its responsibilities. Just to have judges say, okay, we'll pick the lawyers, okay, and then you're stuck with them, that's not good enough. Not in a case where you completely fail to do any supervision or any training at all. Yes, sir? You've gone over your time. Okay. We'll hear from the other side. Thank you. Good morning, Your Honors. My name is Mark English. I am a deputy Yellowstone County attorney. I represent Yellowstone County and the Yellowstone County commissioners. For brevity, I'll refer to the county and the commissioners as simply the county. The court should affirm the district court's decision. The district court correctly granted the county's motion for submission. Where does this duty concept that the court and you went off on come from? That- I fail to find that articulation in any of the Monel cases. Yeah, I would agree with that, Your Honor. Because it doesn't, it's really, they have a right under city of Canton. The defendants have a right, a constitutional right, to competent counsel when they're indigents in a criminal proceeding. And what's the duty? They have a constitutional right. The question is, does the county policy which provides it, does it expose the county liability if they create a cadre of, or a quartet of lawyers who are totally incompetent? You're saying the judges should be the ones on the hook? Who's on the hook? Well, yes, Your Honor. The judges. In short, the judges are on the hook. They are the ultimate guarantors of- Guarantors? No, the question is, whose policy is it? It would have been the state district court judge's policy. To do what? To provide counsel to indigent and criminal defendants in state district court. And under the Montana statutory scheme at the time, the state district court judges were supposed to select, appoint, supervise, and determine the compensation. What does it say, supervise? Well, I'd say the implicit in the appointment under 46-8-101, subsection 2, where they appoint them, would be the selection. And also implicit in that selection is the ability to remove them also. And there are cases in Montana where the state district court judges have removed criminal defense counsel that they believe provided ineffective assistance to counsel in 1988. Well, that's true. We have CJA panels in the federal courts. And there's an appointment to those panels. And the district judges are obliged to appoint counsel in the appropriate circumstances. And if they perform incompetently, they can be sanctioned in court through the court proceedings. And if the activity produces a flawed constitutional judgment, the court system can vacate the conviction. We've got Strickland and all of those things. But how would judges undertake to supervise and train lawyers who are appearing in front of them without violating the canons of judicial ethics and violating the attorney-client relationship? I think there would be problems with that. That's right. So the question I have in this case is trying to understand what system that you were saying is called for under this duty concept that's been introduced on Monel, which is to say the county or the state can essentially put onto the judiciary the obligation to appoint and administer the Sixth Amendment right to when they are, in fact, incapable, as apparently the Chief Justice of the Montana Supreme Court recognized, judicially, of doing the supervision and training that you're talking about. Well, there was Gideon. And it made mandatory upon the states that they had to provide counsel. That's right. And in Montana, we set up a statutory scheme that required the judiciary to select those attorneys. Now, to the they are inhibited from supervising. I think under Polk County also the county would be inhibited from supervising them. I acknowledge we can't interfere with the representation. I mean, we can, though. Okay. Well, let me just understand. It is clear under city of Canton that in the jail hospital, I think, apparently it was the city around the jail. But so it's a county, let's say it's the county jail. And you have an obligation, constitutional obligation, to provide adequate medical treatment to someone who's brought into the jail facility who has a medical problem. And in city of Canton, the defendants included the city and the person at the jail facility. And the issue was who had final policy and decision-making authority. But let's suppose that the county or your county policy is that the jailer, head jailer, is trained to understand and appreciate when somebody is going into cardiac arrest or is going into diabetic coma. And the county has decided that the medical treatment will be assigned to a particular facility that it's got a nice contract with and that this medical facility is known to be one of the worst medical facilities in the area. And that's where the county discharges its constitutional obligation to provide adequate medical care. And it's sending them to a place which is rife with malpractice and so on. Is the county off the hook because it has now delegated that out to a set of professionals who are licensed by the state, et cetera, et cetera, and therefore it's outside your control? No, I don't think so. So what's the difference between that and the system you're talking about? Well, the system we're talking about under the Montana Code annotated, the state district court judges were the final policy makers asked to initiate criminal defense. They were selecting those attorneys. The county was not selecting those attorneys. The county did not have the ability to remove those attorneys if they provided ineffective assistance. Why couldn't the county have told the judges, we're not paying for these lawyers unless we have a say in who they are? Under the statute, the judges had the ability to appoint them. We did not. You wrote the checks, right? Yes, we did have the responsibility. You had the final say, right? Well, we did not have the final say as to how much we would have to pay them. Let me ask you this. You think the judges would have been appointing people if the county said, we're not paying? I think the judges would probably order us to pay them through a written mandate or supervision. They would require us to pay them. You don't think the county had any obligation whatsoever to see who the judges were appointing? No, we did not. We had no control over who the judges were appointing. So if the judges were appointing, routinely appointing, first year graduates out of law school in all felony cases, that was all they appointed. The county would be powerless to do anything about it? Correct. The county could contact the Montana Supreme Court, who has supervisory control over the district courts, and voice a concern that they would not have the power to remove them. Okay. So I gather your only – your position is simply is that the only responsibility in the provision of indigent counsel to indigent defendants was to write the check? Correct. That's it? That's – at that time. The county could have created a county public defender's office. We could have then selected the attorneys, but we did not do that at that time. A county public defender's office didn't come into creation. Why would the legislature want to give the county the option of creating a public defender's system if they didn't have – if their only role was just to write checks? I don't know. I'd imagine it might have given them more control over who was selected as the attorneys as a cost-saving measure. So to bring those two concepts together, you said the county, in my question about incompetent – obviously incompetent attorneys, you said the best they could do, the county could do, would go to the Montana Supreme Court and complain about the quality of representation. Is that correct? Under the system that we had in effect. But that was not done in this case? No. The county could have also apparently decided that the system was providing inadequate counsel, and it could have adopted a public defender's system. It could have. It could have. And so why doesn't that come – why doesn't that then come within the concept of deliberate indifference when the county had two options, neither of which was Well, I don't know if anyone complained to the Montana Supreme Court back in 1988 about any of the public defender's performance they could have. And it was just a discretionary act with the Board of County Commissioners whether or not to create a public defender's office or not. Well, that's your take on it. But I'm trying to understand. You're saying that the – that there is a statutory mandate that only the judges do it, and until the judges got out of it, the county had no obligation to do anything? Under the statutory scheme in 1987. That's what I'm talking about. The judges were obligated to appoint counsel. Yes. Counsel. They had that obligation under Giddey. And determine the compensation they were to be paid. The county was responsible to pay that compensation subject to reimbursement by the State. And that's the system that was used in Yellowstone County in 1987. The county had no obligation then to oversee the quality of representation to take action if, in fact, the services being delivered were sending innocent people to prison. Well, it wouldn't be the county's obligation. It would be the state's obligation. State through the Attorney General's office? Well, I think through the State District Court judges, and also through the county attorney's office would be responsible for that. You mean the DA's office? Well, we have county attorneys. Yes. That would be the equivalent of most DA's in most places. But if the county felt that things just weren't looking good for defendants, they could have established a public defender's office in 1987. They could have in 1987. And I think we established that. They had the legislature intended for them to have a bigger role than you're suggesting. I don't know what the role the legislature wanted us to do. I mean, I can only tell you what actually happened based upon the law that was out there. Which brings me to another point that Braungard mentions the two Montana Attorney General opinions stating that the counties were required to provide counsel. I think that's a misrepresentation of both those opinions. That in 1977, the Montana Attorney General found that states were responsible to pay for the psychiatric evaluations of criminal defendants in State District Court. And he used the term that the county is required to provide incident defendants with attorneys in criminal cases under, then he cites Section 95-1005. And that's on page R-298 of the record. And if you look at Section 95-1005, and that's the revised code Montana, that is now the current 46-8-201, which really requires counties to pay for counsel, not provide in the concept of select. And if you look, the whole paragraph is about paying, not about selecting these people. In 1980, the Attorney General also stated that the county was responsible to pay for the preservation of evidence in criminal cases. And he says the provision of defense services for incident criminal defendants is a county responsibility, and he cites Section 46-8-201. Again, that is the payment provision, not the selection provision. How would you characterize the system that the judges maintained back in 1987 for appointing counsel to indigent defendants in the county of Yellowstone? I wasn't practicing long-hand. I presume, you know, you have this giant book over here. I presume you've studied this carefully, reviewed all the evidence that's been taken. So you've read the depositions of the county supervisors who were around at that time. How would you characterize it? What was it? They were receiving adequate representation. No, no, no. Was it a contract system? Was it a random appointment system? It was an appointment system. We know that there were four lawyers. They got a fixed amount of money at the end of each month after the judges signed the vouchers. Right. The judges were so What was that? I would describe it as an appointment system. The judges decided who they were going to appoint, and they told them that this is the system that you're going to operate under, and then they would submit claims to the county, and the county would pay those claims. How did this particular lawyer get on that list? Do you know? I don't know how he got on the list. He must have been contacted by one of the state district court judges, interviewed with them, and got onto the list. Similar to Alan Beck, who says that he has this oral contract with the county, and if you look at his deposition, which is on page R52, and he says, I have an oral contract with the county. If you look before that, you can tell that he's only talked to state district court judges about becoming one of these attorneys. He never talked to any county official about becoming one of these attorneys. If the Court has any questions. Okay. Thank you, Your Honors. You can have a minute for a moment, Mr. Marshall. Thank you. Three quick points. One is the Attorney General, the Chief Justice of the Supreme Court of Montana, and the Governor all say it was the county's responsibility, not the State's. That's number one. Number two. I'm sorry. The Chief Justice says it's the county's? The Chief Justice of the Supreme Court said it was the county's responsibility, and I can give you the page number. He said that it wasn't the court's responsibility. He actually says the county? Yes. I'll give you the page number. Go ahead. It's at page R-76, and specifically said that the district court nor the Supreme Court administrator may contract for public defender or indigent defense services in civil or criminal matters. In that same presentation, if you look at R-76, you'll hear the judge say. What line? Oof, you've got me there, Your Honor. I think it could be point two, 2.1. Excuse me? It's either 2.1 or 3.1. I'd have to pull it out. It says neither the district court judges nor the Supreme Court may contract. The Governor said as a witness in the White v. Marsh case, specific to the Chief Justice. This is a question I asked you. You said he said it's the county's responsibility. So I asked you, where does he say it's the county's responsibility? I'm sorry. Mr. Lesley, you said, Your Honor, you said the Chief Justice said it's the county's responsibility to supervise. And so I asked you for where. I don't see it. She not only said that judges can contract, but she then goes on to say, I would advise the counties to continue to have either public defender or contract systems because they tend to be cost-effective. All right. Let's see if I get 1.3. That's her point. The Governor specifically said it's not what you said. I apologize if I wasn't particularly clear, Your Honor. The second point. You were just not accurate. The second point I wanted to make, Your Honor, is that they are simply mistaken when they say that by State law, only the Governor, only the judges could determine who was on that contract list. In fact, in the Trombley case, which we cite in Cascade County, it was the county commissioners who there chose to select who would be on their contract list, not the judges. Indeed, of the 15 contract systems in Montana, it was a mixed bag. Sometimes they delegated to judges. Sometimes they did it themselves. So it's a choice that the county makes. And the third thing I'd like to say, and I think it's most important, is Gideon is not what this case is about. It's 1983. 1983 says no person shall violate the constitutional rights of the people. And it doesn't just say the States can't do it. It says no person. And Moneau makes it very clear that the word person extends to counties as well as individuals. Thank you very much. Thank you. Okay, judges. I'll use ten minutes. We're adjourned.
judges: Kozinski, Fisher, Paez